Sandoz, Inc.  I couldn't find any requirement that Sandoz was required to state its position on obviousness in the opening expert reports. There's a reference there in the parenthetical to the pretrial scheduling order, and the pretrial scheduling order is just a general requirement that you state your defenses at some point. Actually, Your Honor, in this particular pretrial order, which we don't have in the record, but my specific recollection having practiced in New Jersey for many years now is that there, in fact, are patent law rules in New Jersey, which require the defendant to cite its defenses fairly early on in the litigation. And what this is referring to are the rules saying that you need, for your invalidity defenses, you need to state all of your defenses fairly early on in the litigation. I don't disagree with you. And I looked at that scheduling order, and I agree that that's what it said. But I didn't say that it said that it has to be in the expert report. Because clearly Sandoz set forth the 411 patent as one of its defenses, listed it as a reference in its obviousness. So it did. But here's what happened as we went into the discovery. We got into discovery, and I specifically asked Dr. Reed, their expert, if they were relying on prior art after December 1996 for both the 411 patent and also the Insight Vision patents. And he expressly said no. At that point in time, as a litigant, I'm sitting here thinking, okay, I don't have to worry about asking Dr. Reed any questions about the 411 patent, because he's now with regard to the Insight Vision patents, just to be clear. Because he sort of carved that out. And in fact, at his deposition, I asked him that question several times. And you may note in the trial record, we had a discussion with Judge Cooper when we got to this point in the litigation. And I specifically pointed all this out. And she asked me the question, well, did their counsel on redirect say, oh, no, he may have made a mistake. For these patents, he's going to rely on a different date. And the answer was no, he did not. So then we get into trial, and I asked him the very same questions again. Is your cutoff date December 1996? And he said yes. But just because their expert decides that he's going to confine himself to an analysis that doesn't include the 411, does that mean that they've necessarily waived the reliance on the 411 entirely? Well, I think Judge Newman brought this point up, which is when you have a technical issue, you need to have expert kind testimony. In fact, in the Provera Scientific case, which is at 536F3rd at 1267, this court said expert testimony is required in the patent dispute where, quote, subject matter is sufficiently complex to fall beyond the grasp of an ordinary layperson, close quote. And what that means to me is you can't expect a district court just to review the patent on their own. Now, counsel made references. But that's different from saying that it was waived or it's not before the court when it was listed as a reference. Maybe there's a question of whether just listing the reference was enough to carry the day when you're trying to persuade a court or a jury on a question. Are you making the argument that the 411 patent was waived as a reference? We're making the argument that Dr. Reed was not allowed to testify about it. I understand, but that was a separate question, because it was listed separately as a reference. Right, and that met the requirements. So we wouldn't be able to argue waiver, per se. But the consequences of him using that cutoff is that there's no testimony from Sando to prove that that reference shows obviousness. Putting all that aside for the moment. Was there any argument? Well, the district court heard evidence from Dr. Reed extensively on the 411 patent. There's page and page in the record about the 411 patent. As we point out in our brief, our brief talks about the 411 patent extensively. That testimony came mostly from Dr. Reed. Dr. Reed was the one who admitted that the 411 patent only disclosed, the inventor only used an ointment. Dr. Reed admitted that the ointment was preferred. Dr. Reed admitted it doesn't disclose polycarbophyll. Dr. Reed admitted that it doesn't have any stability data. And in fact, Your Honor, we think the stability and solubility issue puts to rest any argument by Sando that the claims are obvious. But at the end of the day, much of that testimony came right from Dr. Reed. Our expert, Dr. Lee, also put in testimony. His primary testimony was that, look, these water-based foreign relations, they're going to have a problem. So you're saying even if it did come in, it doesn't make any difference? Even if it was wrong, there's no harm here. Because they got all the evidence in. The district court explicitly said, even though I think the cutoff is correct based on his testimony, I'm going to hear all the evidence on the 411. It's right in her decision. I don't have the site right on top of my head, but it's right at the beginning part of the InsightVision discussion where she says the cutoff applies. But then she goes on to say, well, I heard the testimony anyhow because I know there's going to appeal. And what I heard was the following. It doesn't render the InsightVision claims obvious. And she considered all the experts on that point. At the end of the day, I think that's the positive. That's the 411. The arguments about the various polymers that were out there, what the district court said again is she heard evidence from all of the experts, including Dr. Lee and Dr. Reed. And what she said is, I credit Dr. Lee's understanding of what a person of ordinary skill in the art would be faced with as of that time frame with regard to all the polymers. And Dr. Lee said, I would never use a water-based polymer because of the stability issues. But if I were forced, there's a multitude, many hundreds of various things that could be done here. And the first thing I would do is I would use a thing called a colloidal because that might protect the active from stability issues. What's your comment about the statement at the bottom of Column 3 in the 411 patent about that one example where it's 87% water? So polycarbophil 934 is a water-based polymer, but it's much different, as Dr. Reed and Dr. Lee explained, than polycarbophil, which is a subject matter of the Insight Vision Claims. But wouldn't that teach away from the idea or counter the idea that, well, a person of skill in the art wouldn't want to use azithromycin in a water-based gel? Well, what Dr. Lee said and what Dr. Ahmed, the inventor of the 411 patent, said is that even though these are at bench-scale basis, you still would have a concern about stability because it was well-known and established and uncontroverted that azithromycin was susceptible to stability issues and also it had solubility issues. So whether you could have kept the molecule in solution sufficiently to make a product was also an issue. The district court heard that argument from Dr. Reed. She took all that into consideration, and she found in favor of Plaintiffs and against the defendants. I don't see Plaintiffs saying that that was clear error in any meaningful way, nor can they. And just to make the final point on the polycarbophil 934, the testimony in the record is that, first, there's no evidence that it's an in-situ gel like polycarbophil is, the subject of the Insight Vision patents. And second of all, Dr. Reed said that carbophil 934 was water-soluble. Polycarbophil is not. Dr. Reed admitted it's swallowable and water-insoluble. And in fact, several of the claims require a water-insoluble polymer. So at the end of the day, the district court took into consideration all the evidence from Reed and Lee regarding this example, as well as the inventor, Dr. Ahmed, and he agreed with us that nothing in that patent alleviated the stability issues. There was nothing in the patent that showed stability data, for example, and the inventor clearly used only an ointment in order to make a solution to the example. I know my time is almost up. I just want to quickly make one point on the 411 patent again. What the district court basically found is that Sandoz used references that related to oral azithromycin. And both sides' experts said, look, oral administration is much different than topical ophthalmic administration. Topical ophthalmic is a really specialized area that's very difficult and complex, as the district court found. And so all the data relating to oral azithromycin effectively isn't relevant to whether the molecule itself would be able to penetrate the ocular tissue of the eye. There's other reasons cited in our brief for supporting the 411 claims, but my time is up, so I'll rest. Thank you. This court has never held that the problem to be solved or the framing is a factual question. That would be inconsistent with the Supreme Court's decision in KSR. KSR makes clear that any problem to be solved that is encompassed by the claims makes those claims invalid. The district court violated this basic principle. All the findings that my colleague on the other side is discussing go to that wrong framing. They go to requiring Sandoz to show that it applied to corneal infections, not just conjunctivitis. With respect to the 411 patents, if I can just bring up one point, the district court said that that was a prophetic example, but that's not correct. That conflates enablement with obviousness in the 411 patent. The example 5 and 7 would certainly be in there for all that they teach, and they definitely teach that you could use it in an aqueous-based gel. What we have here, if you take away the framing error and you permit Sandoz to show that it would be obvious to use topical azithromycin to treat bacterial conjunctivitis, we have an obvious claim. All the inventors did here is they took a known child of a known inferior parent and they used it in the very same way. Then with the Insight patents, all they did was they took a general-purpose delivery vehicle and combined it with topical azithromycin. If you take away the district court's framing error, its error with respect to the problem to be solved, the claims are invalid. Thank you. We thank both counsel and the case is submitted.